SUPREME COURT. Onondaga General Term, December, 1864. *Allen, Mullin, Morgan* and *Bacon,* Justices.

THE PEOPLE *v.* THOMAS WALTERS *et al.*

The defendants having pleaded not guilty to a defective indictment for murder, the court refused to quash it upon their motion.

The court will not ordinarily quash an indictment after the defendants have been arraigned and pleaded not guilty.

In cases of indictments which charge the higher crimes, or other offenses which effect the public at large, as perjury, forgery, &c., the courts uniformly refuse to quash, except where the objection could not be obviated or the error corrected by a new indictment. Per MORGAN, J.

The court is in no case bound to quash an indictment *ex debito justiciæ,* but may oblige the defendant to plead or demur. It is to be presumed, in the first instance, that every person has a *christian* as well as a *surname,* and an indictment for murder is defective which describes the deceased as "one Hardy," without other designation, and without an averment by way of excuse, that his name is otherwise to the jurors unknown. Per MORGAN, J.

THE defendants were indicted for the murder of "*one Hardy,*" who was not otherwise named or described in the indictment. They were arraigned before the Court of Oyer and Terminer, of Oswego county, in May, 1864, and pleaded not guilty. The indictment was then removed by *certiorari* into this court. A motion was then made in behalf of the prisoners to quash the indictment.

*A. Perry,* for the prisoners.

*Wm. H. Baker* (District Attorney), for the people.

*By the court,* MORGAN, J. Good pleading undoubtedly requires that the deceased should be described by his christian and surname. If, however, the name is unknown, he should be described as a person whose christian name is unknown, with such other circumstances as will point, with common certainty, to the person intended. ( 1 *Arch.;* 80; 4 *Comyn Digest,* 661, *under letter "G."*) But common certainty is enough, and if the description is sufficient to inform the prisoner who is intended, the indictment may be supported.

( 1 *Chitty Cr. L.*, 303, 304 ; *Comyn Digest, supra.*) " When the name of the injured party cannot be ascertained, the indictment is sufficient for assaulting an unknown. So for robbing, though the ignorance results from the injured party refusing to disclose his name. So for murdering. But proof that the name was known will entitle to an acquittal. The description of third persons that will suffice, is such as where-by they may be distinguished from all others." (*Comyn Digest, supra, p.* 669, *note "r."* )

We are informed by the district attorney that the deceased was a negro man, and was only known by the name of " *Hardy.*" If it was proper to act upon this information, it does not perhaps follow that the deceased was without a chris-tian name. The defect is apparent upon the face of the indict-ment, for it is to be presumed, in the first instance, that every person has a christian name. The fact that it is unknown should have been stated in the indictment. It is not like the case of a misnomer, for, in such a case, the prisoner is required to plead the misnomer, and give his true name. If the name of the injured party is really known, the allegation that his christian name is unknown would be improper. The pris-oner would be discharged from such indictment, and tried upon a new one rectifying the mistake. (*Arch. Cr. L.*, 81, *note* 1, *and cases there cited.*

It has, however, been held that a person may be described by the name by which he is usually known. Thus it has been adjudged that an indictment for an assault on John, parish priest of D., is sufficiently certain. (*Id.*, 81, 82, *citing* 2 *Hawk. R.*, *ch.* 25, § 72 ; 2 *Leach R.*, 248 ; *Russ. & Ry. C. C.*, 510.) In the case of *The State* v. *Farr* (12 *Rich. S. C. R.*, 24), the indictment charged the defendant with unlawfully buying corn " from a certain slave of Joseph Glover, named Cuffy," and it was held to be a sufficient description of the person intended. In the case of slaves, therefore, the legal presumption that they have both christian and surnames, does not seem to obtain. In *Gardner* v. *The State* (4 *Ind. R.*, 632), the indict-ment described the defendant as " one A. G. Gardner, late of

The People *v.* Walters *et al.* ·

said county" of Decatur.   The prisoner was found guilty of a misdemeanor.   The objection that the defendant was not sufficiently described, was taken on the trial and overruled.   On error, the Supreme Court held the objection fatal, and reversed the judgment.

It is unnecessary to say how far such an objection would be available, under our statute, after verdict.   The cases, however, show that when the defendant has a christian name, it must be set forth if it is known.   And the authorities are quite uniform, that if the defendant has no christian name, or if it is unknown, that fact should be averred in the indictment; and then it is somewhat doubtful whether the description would be sufficient without some further description to show who was intended.   Perhaps it would be sufficient to designate him as "a certain negro man by the name of Hardy, whose name was otherwise to the jurors unknown."   If that is the only name by which he is known, it would not be the case of a variance or false description to be taken advantage of on the trial.   And I think it quite doubtful whether the court would not be bound, after verdict, to overlook the defect in the pleading, for the indictment is strictly true so far as it goes; and the further allegation of circumstances, to show the identity of the deceased, or to excuse a further description of him, would not, perhaps, be regarded as of such a substantiative character as to prejudice the defendant within the meaning of the statute. (3 *R. S.*, 5*th ed.*, 1020, § 54, *sub.* 4.) The indictment is now objectionable, because of the uncertainty as to who is intended by the name of Hardy.   It is to be presumed, in the absence of contrary allegations, that he has a christian as well as a surname.   But what becomes of this presumption when the trial shall have disclosed the fact that he had no other name?   Would the court reverse the conviction upon the theory that the deceased had a christian name, if it appeared on the trial that he had none?   But we have now no knowledge, either by affidavit upon this motion or by suitable allegations in the indictment, that Hardy is without a christian name.   I should, therefore, be in favor of

quashing the indictment if the prisoners had not pleaded to it, and the case was one of minor importance. After the indictment was quashed, a new and more regular one may be preferred against them. (*Chitty on Cr. L.*, 304.) For whenever one escapes by means of an insufficient indictment, as his life was not in jeopardy, he is liable to be again indicted. (*Rex* v. *Brumidge*, 3 *P. W. R.*, 480.)

But it is ordinarily too late to move to quash an indictment after the accused has been arraigned and pleaded not guilty. The time when the court will entertain such a motion, however, rests in some degree in the exercise of a sound discretion. (NELSON, J., *in The People* v. *Monroe Oyer and Terminer*, 20 *Wend. R.*, 109.) When the motion is made on the part of the defendant, the rules by which the court are guided are more strict, and their objections are more numerous, because, if the indictment be quashed, the recognizers will become ineffectual. (1 *Chit. Cr. L.*, 300.) And without regard to the time of making the motion, the courts usually refuse to quash on the application of the defendant, when the indictment is for a serious offense, unless upon the clearest and plainest ground; but will drive the party to a demurrer, or a motion in arrest of judgment, or a writ of error. (*Id.*)

It is, therefore, a general rule, that no indictments which charge the higher offenses, as treason or felony, or those crimes which affect the public at large, as perjury, forgery, &c., will be thus summarily set aside. (*Id.; Barb. Cr. L.* 349.)

The prisoners, therefore, are not entitled, as of right, to prevail upon this motion, however defective the indictment may be. At common law, it is said, the judges may, *in discretion*, quash any indictment for any insufficiency in the body or caption of it, as will make a judgment given on it against the defendant erroneous; but they are in no case bound so to do *ex debito justiciæ*, but may oblige the defendant to plead or demur. (*Bacon Ab.*, 382, *Indictment K.*) And this (says the author) they generally do when the offense is of an enormous or public nature, or when the indictment has been removed by *certiorari* and a recognizance for procuring the trial of it has

The People *v.* Walters *et al.*

been forfeited. In *Rex* v. *Johnson and five others* (1 *Wil. R.*, 325), the court say: It is in the discretion of the court whether they will quash any indictment whatever upon motion. And in *The King* v. *Wyn* (2 *East R.*, 226), the court refused to quash a defective indictment, for an aggravated misdemeanor, on motion of the prosecutor after plea pleaded, in order to give him time, if so advised, to prefer another. And see the case of *Rex* v. *The Inhabitants of Belton* (1 *Salk. R.*, 272), where the court say, " we never quash indictments for forgery, perjury or subornation, or any crimes concerning the highways. So of all crimes that are heinous."

Chitty says (1 *Chit. Cr. L.*, 304), that the defendant can gain in general very little advantage, except delay, by such application.

We may, therefore, refuse this motion upon two grounds: First, it is too late, after plea pleaded, to entertain the motion according to the ordinary practice of the courts. Secondly, the indictment is for a heinous offense, and the defect may be corrected by a new indictment, in which case the court uniformly deny the application, especially when the effect will be to discharge the recognizances of any one given for the defendant's appearance, or, if they are in prison, to liberate them.

It is for the district attorney to decide whether he will prefer a more regular indictment against the defendants before putting them upon trial, or whether he will try them upon this indictment, and leave the defendants to move in arrest or to bring error. By our statute a second indictment would, upon motion, supersede the present indictment. (2 *R. S.*, 726, § 42 ; 20 *Wend. R.*, 108.)

I am of opinion, therefore, that the motion to quash ought not to be granted in this case, until a more regular indictment is found and presented. If the district attorney fails to indict again, and the prisoners are convicted on this indictment, the same question may come up for review upon motion in arrest, or upon a writ of error. It is unnecessary to say now what would be our opinion as to the validity of the objection after conviction. Motion denied.